J-A21011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.K., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4097 EDA 2017 |

Appeal from the Order Entered November 13, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  54 OCA 2017

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.K., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4098 EDA 2017 |

Appeal from the Order Entered November 13, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  55 OCA 2017

| | | |
|---|---|---|
| IN THE INTEREST OF; H.R.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.K., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4099 EDA 2017 |

Appeal from the Order Entered November 13, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  56 OCA 2017

BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 07, 2018**

C.K., Sr. ("Father") appeals from the orders entered November 13, 2017, in the Court of Common Pleas of Monroe County, that granted the petitions of M.S. ("Mother") and J.S. ("Stepfather"), and involuntarily terminated his parental rights to his daughters, D.M.K., C.M.K., and H.R.K. (collectively "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938. We affirm.

Mother and Father are the parents of D.M.K., born in May 2004, C.M.K., born in April 2005, and H.R.K., born in February 2009. Mother and Father were married in May 2005. *See* N.T., 10/20/17, at 8. They separated in October 2012 and divorced three years later. *See id*. Mother claimed two issues led to the parties' divorce, Father's heroin addiction, and his sexual relationship with his niece. *See id*.

For much of the time following the parties' separation, Father was incarcerated in Pennsylvania and Arizona. *See id*., at 12-16. Father last saw the Children in 2013. *See id*., at 12, 30. After 2013, Father's contact with the Children consisted of sporadically sending the Children cards or letters. *See id*., at 30. On February 17, 2017, Father sent Mother an email indicating he would "move on and will leave you all alone." *Id*., at 17. Following the email, neither Mother nor the Children had any further contact with Father. *See id*.

On August 18, 2017, Mother and Stepfather filed petitions to involuntary terminate Father's parental rights to the Children. Mother and Stepfather also

filed petitions to adopt the Children.[1] The orphans' court conducted hearings on the petitions on October 20, 2017, and November 1, 2017. Mother, Stepfather, and Father testified. Further, the orphans' court spoke with the Children *in camera*.[2] On November 13, 2017, the orphans' court entered an opinion, as well as decrees, terminating Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[3] Father filed timely notices of appeal and concise statements of errors complained of on appeal.[4]

_____

[1] Mother's filing of an adoption petition was unnecessary as she is the Children's biological mother and her parental rights to the Children have not been terminated.

[2] Recent case law mandates that we address, *sua sponte*, the representation provided by the Children's legal counsel. **See In re: K.J.H.**, 180 A.3d 411, 412-414 (Pa. Super. 2018). Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017) (plurality), held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. **Id**. Here, the court appointed legal counsel for the Children. Counsel provided adequate representation, speaking to the Children and informing the court of C.M.K.'s and D.M.K.'s preference for Father's parental rights to be terminated, and for C.M.K. and D.M.K. to be adopted by Stepfather. **See** N.T., 10/20/17, at 40-44. For reasons that are not clear, counsel did not indicate eight-year-old H.R.K.'s preference to the court. However, H.R.K. informed the court she wants Stepfather to be her father. **See id.**, at 45.

[3] The petitions filed by Mother and Stepfather only sought to terminate Father's parental rights pursuant to subsection (a)(1).

[4] This Court, acting *sua sponte*, consolidated these appeals.

On appeal, Father raises the following issue: "Whether the [c]ourt abused its discretion and/or committed an error of law in terminating Father's parental rights pursuant to [subsections] 2511(a)(1), (2), (5) and (8) and 2511(b) of the Adoption Act." Father's Brief, at 6.

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 4 -

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the orphans' court terminated Father's parental rights pursuant to § 2511(a)(1), (2), and (b). We need only agree with the orphans' court as to any one subsection of 2511(a), as well as subsection (b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the orphans' court's decision to terminate Father's parental rights pursuant to subsections (a)(1) and (b). We begin with subsection (a), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \*\*\*

23 Pa.C.S.A. § 2511(a)(1).

As it relates to subsection (a)(1), the pertinent inquiry for our review is as follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may

> be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa. Super. 1999) (citation omitted). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (citation omitted).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

With regard to a parent's incarceration, "incarceration neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (citation omitted).

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id*. (citation omitted).

Father argues "his testimony is clear and convincing evidence that he made reasonable efforts[,] using the resources available to him[,] to maintain his relationship with his children and . . . the order terminating his parental rights should be reversed." Father's Brief at 11. He asserts that while incarcerated he took advantage of drug and alcohol treatment programs, and that following his incarceration, he was either hospitalized or homeless, making it difficult for him to exercise any physical custody. Father also places blame for his lack of contact with the Children on Mother, claiming she refused to assist Father's efforts to maintain a bond with the Children.

With regard to subsection (a)(1), the orphans' court explained its decision to terminate Father's parental rights as follows:

> Father has not seen the minor children for over three [] years. He has not called or spoken to them in that time. Father has been incarcerated for much of that time during which he sent letters and cards. However, upon release from jail in Arizona earlier this

year, Father was re-arrested three months later in Northampton County, and is now in Lehigh County jail on a probation violation bench warrant. He faces a detainer back to Arizona for violation of probation where he faces a maximum of three [] years incarceration if he is sentenced to the full term of his probation. To Father's credit, he has been clean and sober for 2 1/2 years, due in part to his incarceration, after being an addict for many years. Father just has not done enough to see and maintain a relationship with his children. He also still faces additional incarceration in Arizona. He will not be available any time soon to start caring for and seeing the children. Although he plans to fight extradition to Arizona, it is unlikely his request will be granted. The children deserve permanency and should not have to wait any longer.

Although incarcerated, Father has to take all steps available to him. Incarceration does not toll Father's duties to the children and his continuous incarceration can be considered as an incapability to be a parent to the children. A parent who is incapable of performing parental duties is as unfit as a parent who refuses to perform the duties. Father did not file for a change in custody upon his release from jail in 2017 in order to start seeing the kids. Nor did he make any attempts to see or contact them at that time. Father previously filed for custody modifications and did not attend the conferences. Since Father last saw the kids, he has been incarcerated five different times, with a sixth one pending with the detainer to Arizona. Father had sporadic contact with the children even prior to his incarceration. From the time of separation from Mother in 2012, Father did little to get his life back on track and see his children. Mother stated Father spent little time with the children even when they were together before 2012. Father's last visit with the children was in 2013.

Father blames much of his trouble on drugs. He also stated Mother could have done more to initiate/allow contact with him. Father said Mother cut off some contact because she did not like the woman he was dating at the time. Mother stated she was concerned because the woman Father was dating was his niece. Father failed to explain that situation. Understandably, Mother did not want to expose the children to that relationship. We also find Mother more credible in her testimony when it was in conflict with Father's testimony. As such, we find Father's contact limited to those times set forth by Mother. All of these facts support a finding of termination.

Orphans' Court Opinion, 11/13/17, at 6-8 (citations omitted).

Our review of the record supports the orphans' court's determination. Father testified he last saw the Children in June 2014, while Mother testified Father last saw the Children in 2013. *See* N.T., 11/1/2017, at 9, N.T., 10/20/17, at 12. The court credited Mother's testimony that Father had no direct contact with the Children in four years. In 2012, Father walked out of a custody conciliation because he was in "no shape or form to be in my children's lives at that time." N.T., 11/1/17, at 20-21. An order dated December 3, 2012 provided Mother with sole legal and physical custody of the Children. Father filed for modification of physical custody in 2014, but did not appear at the conciliation, claiming he did not receive notice of the conciliation because he was in between prisons. *See id*., at 21-22. Following Father's release from prison in 2014, Father did not seek a modification of custody, claiming he was homeless and had no money. *See id*., at 23. Father's sole contact with the Children since 2013 came in the form of letters and cards sent from prison. *See* N.T., 10/20/17, at 31-32. Further, Father provided no financial support for the Children. *See* N.T., 11/1/17, at 13.

On February 17, 2017, Father sent Mother an email indicating he would "move on and will leave you all alone." N.T., 10/20/17, Exhibit 6. While Father asserts he sent cards after February 2017, the court credited Mother's testimony that Father's last contact with the Children was sending Christmas cards in December 2016, and the February 2017 email was the last contact

Mother had with Father. *See* N.T., 10/20/17, at 16-17. At the time of the termination hearing, Father had been in Pennsylvania since March 2017 and had not seen the Children or sought to modify custody. *See* N.T., 11/1/17, at 24-25.

Here, the orphans' court determined that Mother and Stepfather established, by clear and convincing evidence, a basis for termination of Father's parental rights under subsection (a)(1). It is apparent that Father did not exert a sincere and genuine effort to maintain a parent-child relationship, using all available resources to preserve the parental relationship while exercising "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. Instead, Father had extremely limited communications with the Children—for four years—and no contact with the Children for more than six months prior to Mother and Stepfather filing the petitions to terminate Father's parental rights. Accordingly, we discern no abuse of discretion or error of law, and we will not disturb the orphan's court's findings with regard to subsection (a)(1).

We next determine whether termination was proper under § 2511(b). Subsection (b) states:

> **(b)  Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed

> pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has stated that the focus in terminating parental rights under subsection (a) is on the parent, but it is on the child pursuant to subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations, brackets and quotation marks omitted; brackets added).

"[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal

bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). And "a parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

With respect to subsection 2511(b), Father's argument is as follows:

Father … made every effort available to him during his incarceration and that his inability to maintain his bond with his children was directly related to Mother's refusal to encourage any contact from the children to their father. Father believes that he could sustain a relationship that would be in the children's best interest if Mother would cooperate in allowing it to happen. Her refusal to do so has prevented his efforts and resulted in his estrangement from the children.

Father's Brief, at 11.

The orphans' court determined termination of Father's parental rights met the Children's needs and welfare pursuant to subsection (b), explaining:

Finally, we examine the needs and welfare of the children in granting termination under Section 2511(b). The children have a strong bond with their Stepfather. They look to him as their father. Their developmental, physical, emotional and educational needs support termination of parental rights. Father is not around, has not been around in some time, and likely will not be around

- 12 -

anytime soon to see, help, support and care for the children. Stepfather is here now and has been a father to the children during Father's absences. He is providing the care, support and nurturing they need. It would be in the children's best interests to terminate Father's parental rights. The children would have permanency without a question of when, or if, Father will be able to support them in the future. Stepfather can provide love and support the children now, and for the foreseeable future. The children should not have to wait any longer for permanency in a situation that is beneficial to them. For all of these reasons, Father's parental rights will be terminated.

Orphans' Court Opinion, 11/13/17, at 8.

The record supports the orphans' court's determination. Contrary to Father's argument, subsection (b) is focused on the developmental, physical, and emotional needs and welfare of the Children. Here, the record establishes that Father has had limited contact with the Children via letters and cards for years, and has not seen them since 2013. Mother and Stepfather have been in a relationship since November 2015, and married in July 2017. *See* N.T., 10/20/17, at 19. Stepfather has a good relationship with the Children, helping them with schoolwork, teaching them to fish, and doing activities with them. *See id*., at 21-22. The Children are doing well in school and are involved with Girl Scouts, band, and soccer. *See id*., at 34. Mother described the Children as "happy again." *Id*., at 22. And, Stepfather wants to adopt the Children and the Children all want Stepfather to be their father. *See id*., at 36, 40-45.

The orphan's court appropriately concluded that Father "is not around, has not been around in some time, and likely will not be around anytime soon to see, help, support and care for the children." Orphans' Court Opinion,

11/13/17, at 8. During Father's absence, the Children have been cared for by Mother and Stepfather, who have provided the Children with love, safety, stability, and support. Accordingly, it is clear that terminating Father's parental rights would best serve the Children's needs and welfare pursuant to subsection (b).

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights. Therefore, we affirm the court's November 13, 2017 orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/18